UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| T.R. HOOVER COMMUNITY DEV. | § | |
| CORPORATION, SHERRI MIXON | § | |
| AND GREGORY T. MAYS, | § | |
|     Plaintiffs, | § | |
| | § | CIVIL ACTION NO. 3:06-CV-2148-O |
| v. | § | |
| | § | |
| CITY OF DALLAS, et al., | § | |
|     Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant City of Dallas' Second Motion for Summary Judgment (Doc. # 133), Brief in Support (Doc. # 134), and Appendix in Support (Doc. # 135), filed May 20, 2009.[1]

Having reviewed Defendant's motion, evidence, and the applicable law, the Court finds as follows:

I.    Background

Plaintiff TR Hoover Community Development Corporation ("TR Hoover") is a not-for-profit corporation that operates various neighborhood programs and services. Doc. # 91 (Pl's Compl.) at 1-2. Plaintiff Sherri Mixon ("Mixon") is the Executive Director of TR Hoover and Plaintiff Gregory Mays ("Mays") is TR Hoover's attorney. *Id.* at 9. Plaintiffs bring claims arising out of the facts as described below.

---

[1] Plaintiffs failed to timely respond to Defendant's motion for summary judgment. Several weeks after the deadline for Plaintiffs' response had expired, Plaintiffs moved for an extension of the deadline to respond. Plaintiffs' request was denied in a separate order.

1

On May 31, 2002, the City of Dallas and TR Hoover executed an Economic Development Initiative ("EDI") Contract under which the City provided TR Hoover with $100,000 in grant money from the City's HUD grant funds. App. at 88-117. Pursuant to the EDI Contract, TR Hoover was to use $10,000 of the $100,000 for staffing expenses and the remaining $90,000 to provide eighteen qualified, low-income home buyers with down payment assistance in the amount of $5,000 per buyer. *Id.* at 19-20, 88, 96; *see also* Pl's Compl at 3. During the administration of the EDI Contract, the City discovered that five of the home buyers had not received the $5,000 down payment assistance. App. at 51, 227. The City asserts that its employee, Paul Garner, believed that TR Hoover had misallocated $25,000 of the EDI grant funds. *See* Br. at 4. TR Hoover asserts that the homeowners had received lower cost building materials instead of the actual down payment assistance required under the EDI Contract. Pl's Compl. at 5; App. at 21, 144-45.

Prior to the discovery of discrepancy with the EDI Contract, the City was looking at TR Hoover as a potential entity with which it could contract for a development project called the Bexar Street Retail Development Project ("BSRDP"). Pl's Compl. at 4. On March 14, 2003, the City sent TR Hoover a letter stating that the Dallas City Council approved a budget including $714,000 for BSRDP to be awarded to and managed by TR Hoover, and stating that TR Hoover could use the letter to help raise matching dollars for completion of the project. Pl's Compl. at 4, Ex. A; App. at 196.

After the City advised TR Hoover of the budget approval, Jerry Killingsworth, the Director of the City's Housing Department, requested that the City Auditor perform a financial due diligence review of TR Hoover. App. at 197. Paul Garner, then Senior Manager in the City

2

Auditor's Office, wrote to TR Hoover advising it of the requested financial due diligence review and asking for information needed for that review. *Id.* at 198. Review of the materials submitted did not resolve the City's funding concerns relating to the EDI Contract. *Id.* at 227-31. Mr. Garner then requested compliance audit information regarding the EDI Contract. *Id.* at 199-200, 228. Unable to resolve concerns regarding the EDI Contract, on September 28, 2004, the City notified TR Hoover of its termination of the EDI Contract. *Id.* at 52, 90, 201-202.

Mr. Garner notified HUD regarding the matter of whether TR Hoover had misapplied $25,000 in EDI funds. *Id.* at 86-87, 228. Mr. Garner contacted Robert Tighe of HUD's Office of Inspector General ("HUD OIG") regarding the situation. *Id.* Mr. Tighe performed his own investigation and review of records, and then, based on his own investigation and Paul Garner's statements, sought a search warrant for TR Hoover's premises. *Id.* at 26, 209, 228-29. On September 21, 2004, finding probable cause, Magistrate Judge Stickney issued a search warrant to the HUD OIG. *Id.* at 205. On September 28, 2004, officers with the HUD OIG searched the offices of TR Hoover. *Id.* at 28.

TR Hoover, Mixon, and Mays filed this lawsuit on September 28, 2006, in the 191st Judicial District, Dallas County, Texas. Plaintiffs allege that Paul Garner provided false information to Robert Tighe, and that this false information was put in Robert Tighe's affidavit supporting the search warrant that was executed by HUD OIG. Pl's Comp. at 10-12. Plaintiffs also allege that TR Hoover is entitled to the $714,000 in funds for the BSRDP, and that the City of Dallas, through its employees and agents Killingsworth and Garner, made disparaging statements regarding, and took actions against, TR Hoover, Mixon, and Mays because TR Hoover is associated with black and Hispanic individuals, because Mixon and Mays are black,

3

and because Mixon is a female. *Id.* at 12-13. Plaintiffs brings claims under 42 U.S.C. §§ 1981, 1983, and 2000d ("Title VI"), and state common law, alleging violations of due process, equal protection, breach of contract, and detrimental reliance.[2] Plaintiffs request compensatory damages, punitive damages, injunctive and administrative relief, and attorneys fees. The City removed this case on November 20, 2006. *See* Doc. # 1 (Notice of Removal).

On July 2, 2008, the Court granted Garner and Killingsworth's Motion to Dismiss Plaintiffs' claims against them on the basis that Plaintiffs never properly served Garner and Killingsworth with process. Doc. # 79. On February 4, 2009, the Court declined to reconsider this ruling, and Garner and Killingsworth are no longer Defendants in this action for the reasons stated in these orders and in open court at a hearing held on August 6, 2008. Doc. # 111. Accordingly, no claims remain pending against Defendants Killingsworth and Garner. *Id.*

On May 20, 2009, the City filed its Second Motion for Summary Judgment, asking the Court to dismiss Plaintiffs' claims against the City.[3] Plaintiffs failed to timely respond to this motion, and the Court has denied Plaintiffs request for an extension of the deadline to respond.

The City's motion is ripe for determination.

## II.   Legal Standard

---

[2] Plaintiff also alleged claims for damage to business reputation, tortious breach of contract, intentional infliction of emotional distress, and abuse of process, but Plaintiffs' intentional tort claims were dismissed by the Court on February 3, 2009. *See* Pl's Compl.; Doc. # 110.

[3] The City's first motion for summary judgment was denied as moot because, after the motion was filed, Plaintiffs were granted leave to amend their complaint. *See* Doc. # 90.

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this burden, the "opponent must do more than simply show . . . some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249. Neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Summary judgment in favor of the defendant is proper if, after

5

adequate time for discovery, the plaintiff fails to establish the existence of an element essential to his case and to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

When weighing the evidence on a motion for summary judgment, the Court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The Court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. As long as there appears to be some support for the disputed allegations such that
 "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Id.* at 250.

Summary judgment may not be awarded by default. *See Hibernia Nat'l Bank v. Administraction Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985); *see also Ford-Evans v. Smith*, 206 F.App'x. 332, 334 (5th Cir. 2006). A motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule. *Simco Enters. v. James River Ins. Co.*, 566 F. Supp. 2d 555, 560 (E.D. Tex. 2008). The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the Court may not grant the motion, regardless of whether any response was filed. *Hetzel v. Bethlehem Steel Corp.,* 50 F.3d 360, 362 n.3 (5th Cir. 1995) (*quoting Hibernia Nat'l Bank*, 776 F.2d at 1279); *see also Owens v. Town of Delhi*, 469 F. Supp. 2d 403, 405 (W.D. La. 2007); *Royal Surplus Lines Inc. v. Brownsville Indep. Sch. Dist.,* 404 F. Supp. 2d 942, 947 (S.D. Tex. 2005).

III.   Analysis

As an initial matter, the Court notes that it previously dismissed all of Plaintiffs' state law intentional tort claims. Individual Plaintiffs Sherri Mixon and Gregory T. Mays only allege state law intentional tort claims against the City. *See generally* Pl's Compl. Accordingly, the Court finds that Plaintiffs Sherri Mixon and Gregory T. Mays no longer have any pending claims in this action.

The Court now addresses whether summary judgment is appropriate with respect to TR Hoover's remaining claims against the City. The City moves for summary judgment with respect to all of Plaintiff TR Hoover's claims against the City. The Court first addresses Plaintiff's claims brought pursuant to 42 U.S.C. § 1983.

   A.   **Plaintiff's Section 1983 claims**

To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) a violation of the United States Constitution or of federal law; and (2) that the violation was committed by someone acting under color of state law. *See Attenberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252-53 (5th Cir. 2005). Here, Plaintiff brings claims against the City of Dallas, a municipality, for violation of its constitutional rights. Specifically, Plaintiff alleges that the City, through the actions of City employees Garner and Killingsworth, violated its rights to substantive and procedural due process and equal protection under the Fourteenth Amendment of the Constitution.

Municipalities cannot be held liable under 42 U.S.C. § 1983 on the basis of *respondeat superior*. *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 415-16 (1997). A plaintiff may demonstrate municipal liability based on: (1) a formally adopted municipal policy; (2) an

informal custom or practice; (3) a custom or policy of inadequate training, supervision, discipline, screening, or hiring; or (4) a single act by an official with final policymaking authority. *Monell*, 436 U.S. at 694 (establishing that § 1983 municipal liability may be based on an officially adopted and promulgated policy); *Johnson v. Moore, III*, 958 F.2d 92, 94 (5th Cir. 1992) (noting that municipal liability may be founded on a persistent or widespread practice of which actual or constructive knowledge is attributable to the policymaking authority); *City of Canton, v. Harris*, 489 U.S. 378, 385-87 (1989) (providing that inadequacy of training may serve as a basis for municipal liability where the failure to train amounts to deliberate indifference to the rights of persons); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986) (establishing that isolated actions or decisions by a municipal policymaker with "final policymaking authority" may create municipal liability).

The Court first considers summary judgment with respect to Plaintiffs' due process claims.

**1. Due Process**

Plaintiff contends that "[b]y conducting the search on the premises (of TR Hoover) based upon false information in the affidavit (of Robert Tighe) when no justification existed for such actions, the City of Dallas . . . violated Plaintiff TR Hoover's rights of substantive and procedural due process."[4]  Pl's Compl. at 13.  The City argues that TR Hoover has not identified

---

[4] While Plaintiff's Complaint states that the City, Killingsworth, and Garner violated TR Hoover's due process rights by "conducting" the search of TR Hoover, Plaintiff's complaint states that the HUD OIG raided TR Hoover's facilities on September 24, 2004. Pl's Compl. at 12, 13.  There is no evidence that Killingsworth, Garner, or any other City employee participated in the search of TR Hoover. *See generally* App.  Thus, it seems that Plaintiff is premising its claim that the City is liable under 42 U.S.C. § 1983 on the contention that City employees provided false information to HUD OIG, and this false information was put in Tighe's affidavit supporting the search warrant procured by HUD.

or introduced evidence that it has suffered a deprivation of a constitutionally protected liberty or property interest, or that any such deprivation was caused by an act of the City or its employees. The City also argues that TR Hoover has failed to establish, even assuming a Constitutional violation, that such a violation was the result of any municipal policy or custom. Further, the City argues summary judgment is appropriate as to TR Hoover's procedural due process claim because TR Hoover was not deprived of any process to which it was entitled.

The Court finds that summary judgment is appropriate with respect to TR Hoover's § 1983 claim premised upon violation of its substantive and procedural due process rights. Even assuming that Killingsworth and Garner violated TR Hoover's due process rights under the Fourteenth Amendment, there is no evidence before the Court raising a genuine issue of material fact that the City of Dallas formally adopted a municipal policy or had an informal custom or practice giving rise to any due process violation; that the City had a custom or policy of inadequate training, supervision, discipline, screening, or hiring giving rise to a due process violation; or that Garner or Killingsworth were officials with final policymaking authority. *See Monell*, 436 U.S. at 694; *Johnson*, 958 F.2d at 94; *City of Canton,* 489 U.S. at 385-87; *Pembaur*, 475 U.S. at 480-81. This finding is fatal to TR Hoover's due process claim under 42 U.S.C. § 1983.

Accordingly, the Court finds that summary judgment is appropriate with respect to Plaintiff's claim that the City violated its substantive and procedural due process rights, brought pursuant to 42 U.S.C. § 1983.

### 2. Equal Protection Claims

Plaintiff contends that "[b]y conducting the search on the premises (of TR Hoover) based upon false information in the affidavit (of Robert Tighe) when no justification existed for such action . . . because TR Hoover associates with people of Black and Hispanic heritage, and/or because the Executive Director of TR Hoover is female, Defendants violated Plaintiff, TR Hoover's rights to equal protection."[5] Pl's Compl. at 13-14. The City argues that summary judgment is appropriate because Plaintiff has not identified any municipal policy or custom at issue, and also because TR Hoover has not presented any evidence that the actions of Killingsworth and Garner caused a violation of equal protection. The City also argues that summary judgment is appropriate because TR Hoover has failed to produce any evidence that it was treated differently than any similarly situated individuals, and that any unequal treatment stemmed from a discriminatory intent.

The Court finds that summary judgment is appropriate with respect to TR Hoover's § 1983 claim premised upon violation of equal protection rights. Even assuming a constitutional violation, the Court finds that there is no evidence before the Court raising a genuine issue of material fact that the City of Dallas formally a adopted municipal policy or had an informal custom or practice giving rise to the alleged equal protection violation; that the City had a custom or policy of inadequate training, supervision, discipline, screening, or hiring that giving rise to the alleged equal protection violation; or that Garner or Killingsworth were officials with

---

[5] As with its due process claims, Plaintiff's Complaint states that the City violated TR Hoover's equal protection rights by "conducting" the search of TR Hoover, but it seems that Plaintiff is premising its claim that the City is liable under 42 U.S.C. § 1983 on the contention that City employees provided false information to HUD OIG that was put into the affidavit supporting the search warrant procured by HUD. *See* n.4, *supra*.

final policymaking authority. *See Monell*, 436 U.S. at 694; *Johnson*, 958 F.2d at 94; *City of Canton,* 489 U.S. at 385-87; *Pembaur*, 475 U.S. at 480-81. This finding is fatal to its claim under 42 U.S.C. § 1983. In addition, the Court finds that that there is no evidence before the Court raising an issue that Plaintiff was treated differently than anyone similarly situated, or that the City had a discriminatory intent.

Accordingly, the Court finds that summary judgment is appropriate with respect to Plaintiff's claim that the City violated its right to equal protection, brought pursuant to 42 U.S.C. § 1983.

### B.      Plaintiff's Section 1981 claims

Plaintiff alleges the same facts in support of its claims under 42 U.S.C. § 1981 as alleged for its § 1983 claims, and seeks to hold the City liable for the actions of Paul Garner and Jerry Killingsworth. *See* Pl's Compl. at 13-14. Section § 1981 does not provide a separate cause of action against local government entities, and Plaintiff's § 1981 claims are brought pursuant to § 1983. *Oden v. Oktibbeha County*, 246 F.3d 458, 462-63 (5th Cir. 2001). The City's liability may not be premised on *respondeat superior*, and to survive summary judgment, there must be evidence raising a genuine issue of fact that the City of Dallas formally adopted a municipal policy or had an informal custom or practice giving rise to the alleged violation; that the City had a custom or policy of inadequate training, supervision, discipline, screening, or hiring giving rise to the alleged violation; or that Garner or Killingsworth were officials with final policymaking authority. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989) (liability under 42 U.S.C. § 1981 cannot be based on a *respondeat superior* theory); *Monell*, 436 U.S. at 694; *Johnson*, 958 F.2d at 94; *City of Canton,* 489 U.S. at 385-87; *Pembaur*, 475 U.S. at 480-81.

11

The Court has already found that there is no evidence raising a genuine issue of material fact that the City of Dallas formally a adopted municipal policy or had an informal custom or practice giving rise to the alleged violation of equal protection and due process rights, that the City had a custom or policy of inadequate training, supervision, discipline, screening, or hiring giving rise to a violation of Plaintiff's rights; or that City employees Garner or Killingsworth were officials with final policymaking authority. *See Monell*, 436 U.S. at 694; *Johnson*, 958 F.2d at 94; *City of Canton,* 489 U.S. at 385-87; *Pembaur*, 475 U.S. at 480-81. This finding demonstrates that summary judgment is appropriate with respect to Plaintiff's § 1981 claims in addition to its claims under § 1983.

Accordingly, the Court finds that summary judgment is appropriate with respect to Plaintiff's claims brought pursuant to 42 U.S.C. § 1981.

### C.   Plaintiff's Title VI claims

Plaintiff alleges that the City is liable under Title VI for conducting a search of TR Hoover's premises based upon false information without justification because TR Hoover associates with people of black and Hispanic heritage, and/or because Mixon is a female. Pl's Compl. at 16-17. The City argues that summary judgment is appropriate because TR Hoover has presented no evidence of similarly situated individuals or intentional discrimination.

Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000d, provides that

> [n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

To prevail on a claim for relief under Title VI, a private litigant must prove that a defendant engaged in intentional discrimination based on race, color, or national origin and that defendant received federal financial assistance. *Alexander v. Sandoval,* 532 U.S. 275, 280 (2001).

As noted above, there is no evidence before the Court raising genuine issues of fact regarding whether the City of Dallas intentionally discriminated against TR Hoover on the basis of race, color, or national origin. In addition, there is no evidence before the Court that similarly situated individuals were treated differently than TR Hoover.

Accordingly, the Court finds that summary judgment is appropriate with respect to Plaintiff's claims brought pursuant Title VI of the Civil Rights Act.

### D. Breach of Contract and Detrimental Reliance

Plaintiff alleges that the City of Dallas failed to provide TR Hoover with access to $714,000 awarded to TR Hoover in connection with the BSRDP. Pl's Comp. at 15-16. TR Hoover also alleges this constitutes breach of contract, was unreasonable and unwarranted, and caused TR Hoover pecuniary and non-pecuniary damage. TR Hoover further contends that by falsely accusing TR Hoover of being involved in illegal activity and causing a warrant to be issued, the City used the existence of the investigation which was instigated by them as a pretext to terminate all contracts with TR Hoover. *Id.*

The City contends that summary judgment is appropriate because TR Hoover has failed to prove the existence of a valid contract, noting that TR Hoover has not presented any written contract stating the essential terms of any agreement concerning the $714,000 for the BSRDP that was properly executed on behalf of the City. Additionally, the City argues that it cannot be held to have waived its sovereign or governmental immunity with respect to TR Hoover's

13

contract claims because the March 14, 2003 letter sent to TR Hoover did not fulfill the requisites of Texas Local Government Code Section 271.151(2).

Immunity from suit bars an action against the State or local governmental entity unless the State expressly consents to the suit. *See Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). Absent the State's consent, a trial court lacks subject matter jurisdiction. *See id.* A party suing a governmental entity must establish the State's consent. *See id.*

Sections 271.151 to 271.160 of the Texas Local Government Code operate to waive local governmental entities' immunity from suit for breach of contract under certain circumstances. TEX. LOC. GOV'T CODE ANN. §§ 271.151-.160. Section 271.152 provides "[a] local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter." *Id*. at § 271.152. Section 271.151 provides that a contract subject to the subchapter containing § 271.152 is a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity. *Id.* at 271.151(2) (defining "contract subject to this subchapter").

Here, there is no evidence raising a genuine issue of fact that there is a written contract stating essential terms of any properly executed agreement between the City and TR Hoover pertaining to the BSRDP funds. There is evidence that on March 14, 2003, the City sent TR Hoover a letter stating that the City Council had adopted a budget plan that included $714,000 for the BSRDP. Pl's Compl. at 4, Ex. A; App. at 196. The letter also stated that TR Hoover

14

could use the letter to help raise matching dollars for the completion of the BSRDP. *Id.* However, the Court finds that this letter does not contain essential contract terms and has not been properly executed on behalf of the City, and therefore this letter cannot be considered a contract as defined by 271.151 of the Texas Local Government Code. *See* Pl's Compl. at 4, Ex. A; App. at 196; TEX. LOC. GOV'T CODE ANN. § 271.151.  Accordingly, this letter does not raise any issue regarding whether the City's governmental immunity has been waived. *Id.* In addition, there is no evidence raising a genuine issue of fact that any other writing exists between the parties that supplies essential terms or that has been properly executed on behalf of the City of Dallas. *See La Joya Indep. Sch. Dist. v. Bio-tech Solutions, Inc.*, No. 13-07-484-CV, 2009 WL 1089459, at *4 (Tex.App.—Corpus Christi Apr. 23, 2009, no pet.); *Vantage Sys. Design v. Raymondville Indep. Sch. Dist.,* No. 13-08-311-CV, 2009 WL 944194 at *8 (Tex.App.—Corpus Christi Apr. 9, 2009, no pet. h.); *Tara Partners Ltd. v. City of South Houston*, 282 S.W.3d 564, 579 (Tex. App.—Houston[14th] 2009, no pet.) (finding no contract to support waiver of immunity under 271.152 where resolution was not in a form that would be presented or executed for the City); App. at 166 (Mixon's deposition testimony acknowledging that she expected a contract would be drawn up after she received the March 14, 2003 letter).

      The City also moves for summary judgment on Plaintiff's claim for "detrimental reliance," in support of which Plaintiff alleges it relied, to its detriment, on the City's promise to make funds available to it. Pl's Compl. at 15.  Texas courts do not recognize detrimental reliance as an actionable tort claim. *See, e.g., Univ. of Tex. Sys. v. Courtney,* 946 S.W.2d 464, 468 (Tex. App.—Fort Worth 1997, writ denied).  Instead, it is viewed as an equivalent to contractual promissory estoppel. *Id.; Roberts v. Geosource Drilling Servs., Inc.,* 757 S.W.2d 48,

50 (Tex. App.—Houston[1st Dist.] 1988, no writ.). Accordingly, to the extent Plaintiff intends to assert detrimental reliance as a stand-alone tort claim, the Court finds that summary judgment is appropriate with respect to this claim.

In addition, the Court finds that, to the extent Plaintiff's are attempting to rely on promissory estoppel, this claim is barred by governmental immunity. Section 271.152 only waives immunity where there is a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity, and does not waive immunity for claims based on quantum meruit. *See* TEX. LOC. GOV'T CODE ANN. §§ 271.151-.152; *City of Houston v. Swinerton*, 233 S.W.3d 4, 12 (Tex. App.—Houston[1st Dist.], no pet.) (court found city's immunity from suit was not waived as to contractor's quantum meruit claim, concluding that the legislature did not intend to include claims of quantum meruit in the statutory waiver of immunity contained in § 271.152 ). Accordingly, the provisions of the Texas Local Government Code waiving immunity for breach of contract do not waive immunity for claims based on promissory estoppel.

A few Texas cases have indicated that governmental or sovereign immunity can be waived by conduct in certain situations. *Fed. Sign. v. Tex. S. Univ.*, 951 S.W.2d 401, 408 n.1 (Tex. 1997) (stating in a footnote that there may be circumstances when the State waives immunity by conduct other than simply executing a contract). The Court has not found any Texas Supreme Court cases applying the so-called "waiver-by-conduct" exception to sovereign and governmental immunity, and it is not clear that such an exception exists under Texas law. *See Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 856-58 (rejecting

party's assertion that the court should apply a waiver-by-conduct exception in a breach of contract suit against the State). In addition, while a few lower courts have applied a "waiver-by-conduct" exception, these courts have required egregious conduct on the part of the governmental entity to apply the exception. *See Tex. Southern Univ. v. State St. Bank & Trust*, 212 S.W.3d 893 (Tex. App.—Houston[1st Dist.] 2007, pet den.) (noting that the Texas Supreme Court has never addressed the waiver-by-conduct exception in a case with such "extraordinary factual circumstances," and applying waiver-by-conduct exception where company provided $13 million in equipment and services, but school refused to pay, and facts showed that governmental officials lured the company into provided services with false promises that the documents at issue constituted a valid and enforceable contract); *see also La Joya Indep. Sch. Dist.*, 2009 WL 1089459 at *4 (finding that the facts of the case did not warrant application of the waiver-by-conduct exception where assistant superintendent of school district approached company about work and provided a letter authorizing the work, and the company completed the work). Here, there is no evidence raising issues of fact that the City "lured" TR Hoover into providing services or otherwise engaged in conduct warranting application of the waiver-by-conduct exception to governmental immunity should such an exception exist under Texas law.

Accordingly, the Court finds that summary judgment is appropriate with respect to Plaintiff's claims for breach of contract and detrimental reliance.[6]

---

[6] The City also moves for summary judgment with respect to Plaintiff's claims for tortious breach of contract. Pl's Compl. at 15-16. The Court has already dismissed intentional tort claims against the city, including Plaintiff's claims for "tortious breach of contract." *See* Doc. # 110; *Life Ins. Co. of Virginia v. Murray Inv. Co.,* 646 F.2d 224, 228 (5th Cir. 1981); *Conway v. Saudi Arabian Oil Co.*, 867 F.Supp. 539, 542-43 (S.D. Tex. 1994) (recognizing that Texas law does not generally award damages for tortious breach of contract except for where a willful tort and breach of contract are established). To the extent tortious breach of contract claims encompass non-intentional conduct, there is no evidence before the Court raising a genuine issue of fact that there has been a waiver of governmental immunity for this

17

### E.     Texas Constitutional Claims

Plaintiff's complaint indicates that it is seeking money damages because the City, in violating TR Hoover's right to equal protection, also violated Section 19 of the Bill of Rights of the Texas Constitution.  As noted by the City, the Texas Supreme Court has held that no private cause of action for money damages exists under the Texas Constitution.  *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 150 (Tex. 1995).  In addition, as discussed above, there is no evidence before the Court raising a genuine issue of fact regarding Plaintiff's equal protection claim.  Accordingly, the Court finds that summary judgment is appropriate with respect to TR Hoover's claims brought pursuant to the Texas Constitution.

### F.     Punitive Damages and Injunctive Relief

The City moves for summary judgment regarding TR Hoover's requests for punitive damages and injunctive relief.  The Court has found summary judgment appropriate with respect to all of Plaintiff's claims.

Accordingly, the Court finds that summary judgment is appropriate with respect to Plaintiff's requests for punitive damages and injunctive relief, as recovery of such relief is dependent on a finding of liability on Plaintiff's substantive claims.

### IV.    Conclusion

For the foregoing reasons, the Court finds that the City's motion for summary judgment should be and is hereby **GRANTED**.

---

claim.

Plaintiffs claims are hereby **DISMISSED with prejudice**.

**SO ORDERED** on this **9th** day of **July, 2009.**

_____
**Reed O'Connor**
**UNITED STATES DISTRICT JUDGE**

19